## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>WEST SIDE COMMUNITY HOSPITAL INC., *et al.*,[1]<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 13-27091<br><br>(Jointly Administered)<br><br>Hon. Eugene R. Wedoff |
| QUINOLA MCCULLOUGH, on behalf of herself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>WESTSIDE COMMUNITY HOSPITAL INC., d/b/a SACRED HEART HOSPITAL, *et al.*,<br><br>　　　　　　　Defendants. | <br><br><br><br>Adversary No. 13-00954 |

## AMENDED NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 8, 2015, at 9:30 a.m., or as soon thereafter as counsel may be heard, we will appear before the Honorable Eugene R. Wedoff, or any judge sitting in his stead, in Room 744 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois 60604, and present **JOINT MOTION FOR AN ORDER: (I) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT RESOLVING WARN ACT CLAIMS; (II) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE PROPOSED SETTLEMENT AGREEMENT; AND (III) SCHEDULING A FINAL FAIRNESS HEARING FOR APPROVAL OF THE SETTLEMENT AGREEMENT AND AN ORDER FINALLY APPROVING THE SETTLEMENT AGREEMENT,** a copy of which is hereby served upon you.

---

[1] The Debtors consist of West Side Community Hospital Inc., Garfield Kidney Center, LLC and Superior Home Health, L.L.C.

Respectfully submitted,

West Side Community Hospital, Inc., d/b/a
Sacred Heart Hospital, et al.,

Dated: March 18, 2015

By ____/s/ _Allen J. Guon_____
        One of their attorneys

Robert M. Fishman (IL ARDC 3124316)
Richard Saldinger (IL ARDC 6209930)
Allen J. Guon (IL ARDC 6244526)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151
rfishman@shawfishman.com
rsaldinger@shawfishman.com
aguon@shawfishman.com

*Counsel for Debtors*

## AMENDED CERTIFICATE OF SERVICE

I, Allen J. Guon, an attorney, certifies that he caused to be served a true copy of the above and foregoing notice and attached pleading upon the attached Service List by the Bankruptcy Court's ECF notification system, unless otherwise indicated, on March 18, 2015.

*/s/ Allen J. Guon*

# Mailing Information for Case 13-27091

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Steven P Lammers      slammers@kdlegal.com, cbocek@kdlegal.com
- Mark W. Bina      mark.bina@quarles.com
- Paul Catanese      pcatanese@mcguirewoods.com, docket@mcguirewoods.com
- David E Cohen      dcohen@fishercohen.com
- David R Doyle      ddoyle@shawfishman.com, kjanecki@shawfishman.com
- Travis J Eliason      teliason@kdlegal.com
- Earle Erman      eerman@ermanteicher.com, druhlandt@ermanteicher.com
- Robert M Fishman      rfishman@shawfishman.com, kjanecki@shawfishman.com
- Jonathan P Friedland      jfriedland@lplegal.com, jthompson@lplegal.com
- Karen R Goodman      kgoodman@taftlaw.com, nbeagan@taftlaw.com
- Emily S. Gottlieb      emily_gottlieb@gardencitygroup.com, paul.kinealy@gardencitygroup.com;PACERTeam@gardencitygroup.com
- Allen J Guon      aguon@shawfishman.com, cowens@shawfishman.com
- John W Guzzardo      jguzzardo@shawfishman.com, jhampton@shawfishman.com
- Edward J. Halper      ehalper@shefskylaw.com, sfdocket@shefskylaw.com
- Michael Kelly      michael.kelly@usdoj.gov, MRavelo@usa.doj.gov
- Amy Knapp      aknapp@smbtrials.com
- Patrick S Layng      USTPRegion11.ES.ECF@usdoj.gov
- Tyler Steven Mertes      tyler.mertes@troutmansanders.com, cynthia.duran@troutmansanders.com
- W. Erin Morris-Campbell      wmorris@morriscampbell.com, wmorris@threesixtylegal.com
- C Daniel Motsinger      cmotsinger@kdlegal.com, crbpgpleadings@kdlegal.com;rhobdy@kdlegal.com
- Joel R Nathan      joel.nathan@usdoj.gov, paula.gabriel@usdoj.gov,marina.ravelo@usdoj.gov,carol.bithos@usdoj.gov,ecf1.ausa@usdoj.gov,patrick.johnson2@usdoj.gov
- Kathryn E. Perkins      KPerkins@klehr.com
- Jack A Raisner      JAR@outtengolden.com, jxh@outtengolden.com;kdeleon@outtengolden.com;kcarter@outtengolden.com

- Marc S Reiser    mreiser@shawfishman.com, jhampton@shawfishman.com
- Kimberly J Robinson    kim.robinson@bfkn.com
- Rene S Roupinian    rsr@outtengolden.com, jxh@outtengolden.com;kdeleon@outtengolden.com;kcarter@outtengolden.com
- Jessica M Scheller    jscheller@atg.state.il.us
- Kathleen A Stetsko    kstetsko@perkinscoie.com, docketchi@perkinscoie.com
- Hans U. Stucki    hstucki@ebglaw.com
- Martin D. Tasch    mtasch@momlaw.com
- Lori S Yokoyama    ly@lscyattorneys.com
- Daniel A Zazove    docketchi@perkinscoie.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WEST SIDE COMMUNITY HOSPITAL INC., *et al.*[1] | Case No. 13-27091 |
| Debtors. | (Jointly Administered) |
| | Hon. Eugene R. Wedoff |
| QUINOLA MCCULLOUGH, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | Adversary No. 13-00954 |
| WESTSIDE COMMUNITY HOSPITAL INC., d/b/a SACRED HEART HOSPITAL, *et al.*, | |
| Defendants. | |

**JOINT MOTION FOR AN ORDER: (I) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT RESOLVING WARN ACT CLAIMS; (II) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE PROPOSED SETTLEMENT AGREEMENT; AND (III) SCHEDULING A FINAL FAIRNESS HEARING FOR APPROVAL OF THE SETTLEMENT AGREEMENT AND AN ORDER FINALLY APPROVING THE SETTLEMENT AGREEMENT**

West Side Community Hospital Inc. (d/b/a Sacred Heart Hospital), the Debtor in the above-captioned chapter 11 proceeding, and Quinola McCullough, on behalf of herself and as Class Representative for the Class certified by Order of this Court on January 15, 2014 (Adv. Pro. Doc. 32) ("Plaintiff" or "Class Representative"), represented by their respective counsel, hereby file this Joint Motion to Approve Settlement as to all claims in the action *McCullough v. West Side Community Hospital Inc.,* et al., Adversary Proceeding No. 13-00954 (Bankr. N.D. Ill.) (the

---

[1]

"WARN Action").  A true and correct copy of the Settlement Agreement dated February 20, 2015 (the "Settlement Agreement") is attached hereto as <u>Exhibit A</u>.  Debtor and the Plaintiff are collectively referred to hereinafter as the "Parties," and in support of the Motion, the Parties state as follows:

## I.    <u>INTRODUCTION</u>

1.    The Class Representative sued Debtor for allegedly failing to provide 60 days written notice to its employees before ordering mass layoffs and/or plant closings on or about July 1, 2013, as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act").  Class Counsel contends that, should the Class Representative prevail in the litigation, the WARN Act claim of the Class Members for 60 days wages and benefits would be approximately $1.3 million dollars, plus attorneys' fees and expenses, and that such claims are entitled to administrative expense priority status under 11 U.S.C. § 503(b)(1)(A)(ii) or, alternatively, wage priority under 11 U.S.C. § 507(a)(4), (5).  The Debtor disputes its liability and that the Class claims are entitled to administrative expense or wage priority. Under the Settlement Agreement, in exchange for a full release for all claims arising from the mass layoffs and/or plant closings, the Settlement Class shall have an allowed wage priority claim pursuant to the United States Bankruptcy Code § 507(a)(4) in the total amount of $360,000 (the "Settlement Amount"), from which the Class Representative Payment (as defined herein) and Class Counsel's fees and expenses shall be paid, to the extent approved by the Bankruptcy Court. The Settlement Amount will be distributed to the Class Members in accordance with the terms of the Settlement Agreement.

2.	A trial on the applicability of the WARN Act and whether Debtor violated the law would require both sides to engage in extensive expert and non-expert discovery at significant expense and with inherently uncertain results at trial.

3.	Moreover, if the Court found that Class Members were entitled to even one more day of notice than they were provided, then Class Members contend that they would be the prevailing parties entitled to not only their damages, but their attorneys' fees and expenses, risking further depletion of the Debtor's resources.  The proposed Settlement Agreement thus provides a cost-effective global resolution to the WARN Class Action.

4.	Additionally, litigation over the issue of whether Class Members' claims are entitled to administrative expense priority status will add another layer of time and expense to the proceedings.

5.	The Parties believe that without the settlement, the Class could wait years for any payment on their alleged WARN claims, even if they prevail at trial and on appeal, and risk depletion of the estate through continued administrative and litigation costs.

6.	In light of these factors, the Parties have determined that the terms of the Settlement Agreement are fair and reasonable.

7.	The Parties request a two-step approval process to facilitate notice to Class Members and approval of the Settlement Agreement.  First, the Parties will seek preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members ("Class Notice") by first class mail.  The Class Notice will describe the Settlement Agreement, inform the Class Members of their right to object to the Settlement Agreement, set forth the deadline for objections, and set the date and time of the second hearing, including the Fairness

Hearing, to determine final approval of the Settlement Agreement. The relief sought at the initial hearing is referred to hereinafter as the "Preliminary Relief."

8.    Second, after service of the Class Notice, the Parties request that the Court hold a Fairness Hearing and finally approve the Settlement Agreement.

9.    Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Motion.

### A.    Jurisdiction

10.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334.

11.    The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A)and (B).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1408.

### B.    Background

13.    Until about July 1, 2013, Debtor operated a hospital at 3240 West Franklin Boulevard, Chicago, Illinois and other health care facilities in the nearby geographical area.

14.    Plaintiff worked at the hospital until her termination on or about July 1, 2013. Within 30 days of July 1, 2013, Debtor also terminated approximately 250 other similarly situated employees who comprise the Class.

15.    On July 2, 2013, Debtor and its affiliated entities filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Bankruptcy Code. The cases are being jointly administered in this Court under Bankruptcy Case No. 13-27091.

16.    On or about July 9, 2013, Plaintiff filed an Adversary Proceeding Complaint against Debtor in this Court. On or about August 27, 2013, Plaintiff filed a First Amended Complaint (the "Complaint"). In the Complaint Plaintiff asserts that the nature of the claims

against Debtor as well as the claims of all similarly-situated employees, and further asserts that

those claims are entitled to partial administrative expense status pursuant to the United States

Bankruptcy Code § 503 (b)(1)(A) and partial, or alternatively, full priority status, under 11 U.S.C.

§§ 507(a)(4) and (5), up to the $12,475 priority cap, with the balance, if any, being a general

unsecured claim.

17.     On January 14, 2014, the Court entered a Consent Order certifying a class

comprised of former employees of Debtor who: (i) worked at the Debtor's facility located at

3240 W. Franklin Boulevard, Chicago, Illinois and allege that they were terminated without

cause as part of, or as the result of, mass layoffs or plant closings ordered by the Debtor on or

about July 1, 2013; and (ii) who were not provided 60 days' advance written notice of their

terminations by the Debtor. (Doc. 32).

18.     On March 12, 2014, Class Counsel mailed Notice of the class action to the 236

members of the certified class. (Doc. 33).

19.     On April 18, 2014, Class Counsel affirmed that two members of the Class elected

to opt-out. (Doc. 34).

20.     On May 29, 2014, Debtors filed a Joint Confirmation Plan. (Bankr. Case No. 13-

27091, Docket No. 296).

### C.     Discovery and the Settlement Negotiations

21.     The Parties have engaged in informal discovery in this matter, including the

exchange and review and analysis of payroll records for issues regarding inclusion in the certified

class and damages, and the exchange of damage calculations and theories of the case.

22.     The complexity of the factual and legal issues, the uncertainty of a specific result,

along with the inherent delay and substantial expense of litigation, led the Parties to conclude that

it is in their respective best interests to resolve their disputes through a comprehensive compromise.

23.     The Parties have memorialized the terms of their compromise in the Settlement Agreement.  The Settlement Agreement is a settlement of any and all claims asserted, or which could have been asserted, in the WARN Class Action.

## II.     SIGNIFICANT TERMS OF THE SETTLEMENT AGREEMENT

24.     The material terms of the Settlement Agreement are as follows[2]:

a.     Creation of a Settlement Amount:  Provides that the Class shall have an allowed priority wage claim pursuant to § 507(a)(4) of the Bankruptcy Code in the amount of $360,000 (the "Settlement Amount"), from which the Class Representative Payment (as defined herein) and Class Counsel's fees and expenses shall be paid, to the extent approved by the Bankruptcy Court.  The Settlement Amount shall be paid on pro rata basis as soon as reasonably practicable following the Effective Date and in accordance with the Debtor's chapter 11 plan ("Plan").  The "Effective Date" of the Settlement Agreement shall be the later of (i) the date upon which Settlement Order has become final and (ii) the occurrence of the effective date of the Plan confirmed by the Bankruptcy Court to 11 U.S.C. § 1129;

b.     Distribution of Settlement Amount: Distributions to individual Class Members shall be made on a pro rata basis contemporaneously with the payment of Class Counsel's Fees and Expenses and the Class Representative Payment, based upon each individual Class Member's average monthly gross wages or gross salary and all benefits under any employee benefit plan during the sixty (60) day period preceding July 1, 2013, as applicable;

c.     Payment to Class Representative:  Provides for a one-time payment of Five Thousand ($5,000.00) Dollars, payable from the Settlement Amount to the Class Representative as compensation for her services to the Class, in addition to her pro rata share of the Settlement Amount;

d.     Class Counsel's Fees and Expenses:  Provides for attorneys' fees in the amount of one-third (33 ⅓%) of the Settlement Amount, net of litigation expenses (including the costs associated with the production and mailing of the class notice to the Class) not to exceed $7,500, and the Class Representative's Service Payment;

e.     Release of Debtor:  Provides that Plaintiff and all other Class Members, for and on behalf of themselves and their respective predecessors, successors, assigns,

---

[2] The Motion merely summarizes the terms of the Settlement. The Debtors and Plaintiff refer the Court and all parties to the Agreement (attached as Exhibit A) for the complete terms and conditions.

heirs, personal representative and estates will fully and forever release and discharge (i) the Debtor, Garfield, Superior and their respective estates, (ii) Edward Novak, West Side Community Hospital Limited Partnership, West Side Management Corporation, and Park Place, L.L.C., and (iii) for each of the persons and entities listed in (i) and (ii), their current and former shareholders, officers, directors, employees, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, which the Releasing Parties may now have or hereafter may have against the Released Parties, which relate to or are based on the WARN Act or back or severance pay or benefits under any federal, state or local law or regulation arising out of the termination of Class Members' employment by the Debtor, including, but not limited to: (a) all claims asserted or that could have been asserted in the WARN Action; (b) the individual WARN Act claims; and (c) any other claims for back or severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation; provided, however, that the following claims and/or rights shall not be released: (x) any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependent of a Class Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985; and (y) rights, if any, unrelated to Class Members' WARN claims, under the Debtors' 401(k) plans. The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder.

     f.     <u>Issuance of Notice of the Settlement</u>: Provides that Class Counsel will provide Notice of Settlement to the Class Members by first class mail to each Class Member's last known address upon entry of this Court's order granting preliminary approval of the settlement, indicating:

- that the Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement Agreement shall be effective as to all Class Members who did not opt-out of the Class;

- that such Class Member has the right to object to this Settlement Agreement in person, to retain counsel and be heard at the Fairness Hearing; and

- that all Released Claims of a Class Member (other than those claims to be paid under the terms of the Settlement Agreement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

      g.   <u>Residual Funds</u>:  Provides that settlement checks mailed to Class Members that are not cashed within 90 days shall revert back to the Debtor for the benefit of the Debtor's bankruptcy estate.

25.    Upon entry of an order preliminarily approving the Settlement Agreement, approving the form and manner of notice to the members of the Class, and scheduling a Fairness Hearing, Debtor will cause notice of the proposed Settlement Agreement and the Fairness Hearing to be served upon the Office of the United States Trustee and all parties requesting notice of proceedings in the chapter 11 cases pursuant to Bankruptcy Rule 2002.

26.    With regard to the members of the Class, the Parties propose that the Notice of the Proposed Settlement of Class Action and Fairness Hearing that is attached hereto as <u>Exhibit B</u> be served on all Class Members, and such notice shall comprise such notice to the Class Members as is necessary for approval of the Settlement Agreement.

27.    The Parties further submit that service of the Class Notice by first class mail, postage prepaid, to each Class Member at each Class Member's last known address as shown in the Debtor's records, as updated by Class Counsel, is the best notice practicable under all the circumstances. Furthermore, while Federal Rule of Civil Procedure 23, as adopted by Bankruptcy Rule 7023, does not impose a minimum notice period, the Parties have attempted to ensure that the parties in interest in the chapter 11 cases and all potential Class Members receive a minimum of 21 days' notice of the Fairness Hearing, as required under Bankruptcy Rule 2002.

28.    Although no rigid standards govern the contents of notice to Class Members, the notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Zolkos v. Scriptfleet, Inc., et al.*, No. 12-civ. 8230 (GF); 2014 WL 7011819 at *6 (N.D. Ill. Dec. 12, 2014); *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S. Ct. 124 (1975), *quoting, Philadelphia Housing Authority v. American*

*Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970), *aff'd sub nom, Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3rd Cir.1971). Mailing to each class member's last known address is appropriate. *Zolkos v. Scriptfleet, Inc., et al.*, 2014 WL 7011819 at *6; *In re AT&T Mobility Wireless Data Services Sales Litigation*, 270 F.R.D. 330, 352 (N.D. Ill. 2010).

29.     Here, the contents of the proposed Class Notice are sufficient.  The Class Notice summarizes the WARN Class Action and apprises the Class of the terms of the Settlement Agreement, that complete information regarding the Settlement Agreement is available upon request from Class Counsel, that any Class Member may object to the proposed Settlement Agreement, and that any Class Member may appear at the Fairness Hearing in person or by their own counsel.  In short, the proposed Class Notice satisfies all the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

30.     In light if the nature of the relief requested, the Parties submit that no other or further notice need be given.

### III.     RELIEF REQUESTED AND BASIS THEREFORE

31.     In addition to the Preliminary Relief, the Parties seek the Court's final approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a) of the Bankruptcy Rules and pursuant to Debtor's authority to seek Bankruptcy Court approval of settlement agreements.

### A.     The Legal Standard

32.     Section 363(b) of the Bankruptcy Code provides that the debtor "may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b). The settlement of claims involves the use of estate property outside the ordinary course of business and requires court approval under § 363(b). *In re Resource Technology Corp.*, 356 B.R. 435, 444

(Bankr. N.D. Ill. 2007); *In re Telesphere Communications, Inc.,* 179 B.R. 544, 551 (Bankr. N.D.

Ill. 1994) ("The settlement of a cause of action held by the estate is plainly the equivalent of a sale

of that claim.").  Fed. R. Bankr. P. 9019(a) authorizes the court, after a hearing on such notice as

the court directs, to approve a compromise or a settlement.  Fed. R. Bankr. P. 9019(a).

33.     The use, sale, or lease of property of the estate, other than in the ordinary course of

business, is authorized when "the transaction makes good business sense" and "preserves the

priorities among creditors."  *See, e.g., United Retired Pilots Benefits Protection Assn. v. United

Airlines, Inc. (In re UAL Corp.)*, 443 F.3d 565, 572 (7th Cir. 2006) ("the criteria for approval [under

§ 363(b)(1) is] whether the transaction makes good business sense and does not disturb creditors'

rights"); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (sale under § 363 involves exercise of

fiduciary duty and requires an "articulated business justification").

34.     The central issue in approving a bankruptcy settlement is whether the settlement is

in the "best interests of the estate."  *In re Energy Co-op., Inc.*, 886 F.2d 921, 927-29 (7th Cir.

1989); *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.)*, 841 F.2d 159, 161 (7th Cir. 1987).

In order to make that determination, a court must compare "the value of the settlement with the

probable costs and benefits of litigating."  *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421,

426 (7th Cir. 2007).  Among the factors that the Court should consider in its analysis are (i) the

litigation's probability of success, (ii) the litigation's complexity, (iii) the litigation's attendant

expense, inconvenience and delay (including the possibility that disapproving the settlement will

cause wasting of assets).  *See, e.g., Doctors Hosp.*, 474 F.3d at 426; *Energy Co-op., Inc.*, 886 F.2d

at 927.

35.     Based on the foregoing analysis, the court must determine whether the settlement

falls within the reasonable range of possible litigation outcomes.  *Doctors Hosp.*, 474 F.3d at 426.

Since litigation outcomes cannot be precisely determined, the Debtors' decision should not be disturbed unless the settlement "fall[s] below the lowest point in the range of reasonableness." *See, e.g., Energy Co-op.*, 886 F.2d at 929; *In re Commercial Loan Corp.*, 316 B.R. 690, 698 (Bankr. N.D. Ill. 2004).  The approval of a settlement is committed to the sound discretion of the bankruptcy court.  *Commercial Loan Corp.*, 316 B.R. 697, 698 (Bankr. N.D. Ill. 2004) <u>citing</u> *In re Andreuccetti*, 975 F.2d 413, 421 (7th Cir. 1992).

### 1.      The Settlement Agreement is in the Best Interests of the Estate

36.      Here, while Debtor believes that it has a probability of success in litigating against the claims asserted in the WARN Class Action and does not admit liability, Debtor recognizes that the claims are complex and would require the expenditure of a significant amount of time, expense and resultant delay if litigated to conclusion.  The Settlement Agreement is thus of paramount importance to Debtor as it will prevent Debtor from expending significant resources on protracted litigation and diminishing the distribution to the Debtor's other creditors. *See In re Teknek*, 402 B.R. at 261 (best interests of the estate satisfied where "[e]ven though the likelihood of success on the merits is high, the Trustee notes the additional time and expense that may be incurred by further [litigation]"). The resolution of the WARN Class Action will also enable the Debtor to resolve a potentially sizable priority claim that would otherwise impair confirmation of a chapter 11 plan.

37.      Therefore, it is Debtor's view that a settlement of the issues raised in the Complaint and on the terms contained in the Settlement is in the best interests of Debtor's estates, is fair and reasonable, and is within Debtor's sound business judgment.[3] *See, In re Fort Wayne Telsat,* 489

---

[3]  In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all their rights and nothing in this Motion or in the Settlement Agreement shall be deemed or construed as an admission of any fact, liability, stipulation, or waiver, but rather as a statement made in furtherance of settlement discussions.

B.R. at 781 ("Although the trustee's determination of a compromise is not controlling, the trustee is invested with a great deal of discretion as to the exercise of his/her business judgment.").

### 2.    The Settlement Should Be Preliminarily And Finally Approved As Fair, Reasonable And Adequate To The Class.

38.    Approval of a settlement after a class has been certified generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. MANUAL FOR COMPLEX LITIGATION § 21.632 (2004). Pursuant to the Federal Rules of Civil Procedure, "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). Accordingly, the Court has authority to conduct a preliminary fairness review of a proposed class action settlement. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004). As part of a preliminary fairness review, the court must make a determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the proposed settlement, and date of the final fairness hearing.

39.    At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the range of reasonableness. 4 Newberg § 11.26. Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations by experienced counsel, where there are no obvious deficiencies and the settlement falls within the range of reason. *Zolkos,* 2014 WL 7011819 at *2.

Here, the Settlement Agreement has no obvious deficiencies and falls within the range of reason. First, the Settlement Agreement is the result of good-faith, arm's length negotiations between capable adversaries. The Parties have been in discussions with respect to the WARN Action since the filing of the adversary. The Parties engaged in several months of informal discovery and settlement negotiations. Information regarding the facts leading to the shutdown

were explored and discussed between the Parties, Debtor shared payroll information, and the Parties exchanged WARN damages' analysis with one another.

41.     The Class is represented by counsel with extensive experience and expertise in WARN Act matters, including the litigation of WARN claims in bankruptcy. Class Counsel has been appointed class counsel and prosecuted more than seventy-five WARN Act cases, a majority of which were litigated in bankruptcy courts as adversary proceedings.  Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate. Class Counsel has exercised that judgment in this case with respect to the Settlement Agreement.

42.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

**3.     The Settlement Should Be Given Final Approval at the Fairness Hearing.**

43.     The Court should set a Fairness Hearing at which time the Court should finally approve the Settlement Agreement.  *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (internal quotation mark omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate'"), *citing* Manual for Complex Litigation § 1.46, at 57 (West 1977).

44.     Federal Rule of Civil Procedure 23(e)(1)(C) provides that,

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

45.     The Parties submit that not only should the Settlement Agreement be approved as set forth above, but that the Settlement Agreement should also be approved as fair, reasonable and adequate to the Class for the following reasons:

- As set forth above, the risks of being unable to establish liability and damages were significant because of affirmative defenses available to Debtor and the financial condition of Debtor's estate. The Settlement Agreement provides meaningful relief to the Class without further litigation, trial and possible appeals.

- The terms of the Settlement Agreement is well within the range of possible recovery and well within the range of reasonableness given the uncertainty of establishing liability and the ability for any meaningful recovery in this estate. Class Counsel believes that the Settlement Agreement provides for approximately a one third recovery of the Class' maximum WARN claim, with a distribution to the Class to occur this year.

- Continued litigation would have been complicated, protracted and expensive, requiring depositions, pretrial motions, trial and possible appeals, thereby depleting Debtor's estate and delaying and diminishing distributions to the creditors, including Class Members.

- The Settlement Agreement was after the essential facts had been thoroughly investigated by Class Counsel through formal and informal discovery.

- Class Counsel and the Class Representative support the Settlement Agreement and Class Counsel believes that the majority of the Class Members will have a favorable reaction to the Settlement Agreement and will not object.  Class Counsel, who has extensive experience in complex class action litigation, negotiated the proposed Settlement Agreement at arms' length.  Debtor also supports the Settlement Agreement.

For all these reasons, the Settlement Agreement should be approved as fair, reasonable and adequate to the Class.

**4.      Payment to the Class Representative for Her Service to the Class is Reasonable and Routinely Awarded.**

46.      The Settlement Agreement provides, subject to Court approval, that the Class Representative receive a service payment in the amount of Five Thousand ($5,000) Dollars to compensate her for her service to the Class. [4]

47.      Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *In re AT & T Mobility Wireless Data Services Sales Tax Litigation*, 792 F.Supp. 2d 1028, 1030

---

[4] In addition to the service payment, the Class Representative will be authorized to participate in the settlement as a Class Member.

(N.D.Ill. 2011) ("With respect to incentive payments, the Seventh Circuit has explained that such "awards are justified when necessary to induce individuals to become named representatives"), *citing In re Synthroid Marketing Litigation,* 264 F.3d 712, 722 (7th Cir. 2001); *In re. Synthroid Mktg. Litig.*, 264 F.3d 712, 722-723 (7th Cir. 2001) ("Incentive awards for class representatives are fairly common").

48.     Here, the Class Representative should be awarded a service payment for the work she undertook on behalf of approximately 250 former employees. In addition to incurring the risks inherent in serving as the sole named plaintiff, she provided information during several interviews regarding the structure of the company, the jobs and compensation of herself and others, and the events surrounding her termination. She provided Class Counsel with valuable information, expended time and effort to assist with the preparation of the Complaint and the motion for class certification, provided counsel with relevant documents in her possession and assisted counsel in the investigation of the WARN claims. Courts recognize the important factual knowledge that named plaintiffs bring to employment class actions, including information about employer policies and practices that affect compensation.

49.     The amount of the requested service payment is within the range approved by other Seventh Circuit Courts. *Chesemore v. Alliance Holdings, Inc.*, No. 09–cv–413–wmc, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014). ("district courts in this circuit have awarded incentive fee awards ranging from $5,000 to $25,000."); *See also*, Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 UCLA L.Rev. 1303, 1308 (2006) (empirical study of incentive awards found that the average award was $15,992).

50.     The amount of the requested service payment is also reasonable given awards approved by bankruptcy courts in other WARN class actions. *See e.g.*, *Callahan, et al v. Taylor*

*Bean & Whitaker, et al.*, Adv. Proc. No. 09-00439 (JAF) (Bankr. M.D. Fla. 2009) (service award of $7,500 for each class representative approved); *Jones v. Alliance Bancorp*, Case No. 07-51799 (CSS)(Bankr. D. Del. 2010)(awarding class representative service payment of $15,000); *Mochnal v. EOS Airlines*, Case No. 08-08279-ASH (Bankr. S.D.N.Y. 2008) (awarding $15,000 service payment to the class representative in Settlement Amount comprised of $350,000 cash plus 35% of general unsecured distributions on behalf of 375 class members); *Binford, et al. v. First Magnus Capital, Inc.*, Case No. 08-01494-GBN (Bankr. D. Ariz. 2010)(awarding eight class Representative service payments of $7,500 from Settlement Amount of $2.6 million cash plus $2.9 million contingent proceeds); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex. 2007) (awarding $10,000 service payments to two class Representative in a settlement of $1.4 million on behalf of a certified class of 392 members); *Bridges v. ContinentalAFA Dispensing Co.*, Case No. 08-45921 (Bankr. E.D. Mo. 2008) (awarding $10,000 service payment to class representative in a class settlement of $1.5 million for approximately 325 employees); *Johnson v. First NLC Financial Services, LLC*, Case No. 08-01130 (Bankr. S.D. Fla. 2008) (awarding $5,000 service payments to two class Representative in a $400,000 settlement); *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) (awarding $15,000 service payment to class representative on behalf of a certified class of 900 for $1 million).

51.     In this case, Class Counsel submits that the Class Representative, Ms. McCullough performed important services for the benefit of the Class.  Accordingly, the $5,000 proposed service payment is appropriate and justified as part of the overall Settlement Agreement in light of her services to and risks taken on behalf of the Class. Moreover, Debtor does not oppose this proposed award of a service payment to the Class Representative.

5.      **Under The Settlement Agreement, Class Counsel Requests a Reasonable Fee of One Third of the Distribution with Respect to the Common Fund.**

52.      As part of the Settlement Agreement, Class Counsel is requesting a fee of one-third of the common fund, net of expenses and the Class Representative's service payment.[5] "Lawyers who recover a common fund are entitled to reasonable attorneys' fees from the fund they created." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the Supreme Court has consistently recognized the common fund doctrine to permit attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a result of their efforts).

53.      Here, Class Counsel negotiated a contingency percentage of 33⅓% to trial and 40% thereafter, early on with the Class Representative.  This percentage is in line with other common fund settlements. *McKinnie v. JP Morgan Chase Bank*, 678 F.Supp.2d 806, 812 (E.D. Wis. 2009) (attorneys' fees of approximately 30% approved as "common among contingency fee arrangements and is not facially unreasonable).

54.      Parties to a class action may negotiate attorneys' fees based on a percentage of the entire common fund. *Id.; City of Greenville v. Sygenta Crop Protection, Inc.*, 904 F.Supp. 2d 902, 908 (S.D.Ill. 2012)("[w]here the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered."), *citing Will v. General Dynamics Corp.*, No. 06-cv-698-GPM, 2010 WL 4818174 at *2 (S.D. Ill. Nov. 22, 2010).

---

[5] Class Counsel has incurred $3,850.00  in expenses through March 9, 2015, and anticipates incurring additional expenses totaling up to $7,500.00 in finalizing the settlement, participating in the hearings for preliminary and final approval of the Settlement Agreement, providing notice to the class, responding to class members' inquiries regarding the settlement, and assisting in the distribution of the settlement fund, including expenses incurred in searching for class members' updated addresses via a national database.  Class Counsel's litigation expenses will range from approximately $15-30 per class member depending on the ultimate total.

55.     Class Counsel undertook this action on a contingency fee basis with no assurance of recovery for its time, let alone reimbursement of its out of pocket expenses.  Class Counsel has received no compensation during the course of this litigation.

56.     Class Counsel initiated this suit on behalf of a putative class against a bankrupt estate on an entirely contingent basis. Both liability and damages were contested by Debtor and there was no guarantee of (1) class certification; (2) ultimate recovery; or (3) collectability of an award due to Debtor's bankruptcy case. Class Counsel bore the burden of ultimately demonstrating to the Court that a group of employees existed with common questions of law and fact such that the case could be maintained as a Rule 23 class action, and that the suit should proceed as an adversary proceeding versus the more burdensome and costly claims process.  Class Counsel was successful in obtaining class certification and able to achieve a recovery for the Class in a threadbare estate, however, none of these results were foreseeable at the outset. Had Class Counsel recovered nothing for the class, they would not have been entitled to any fee at all.  Thus, the substantial risk of litigation justifies the fee requested.

57.     WARN Act cases by their very nature, are complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in WARN Act actions inevitably must be prepared to make a tremendous investment of time, energy and resources.  Due also to the contingent nature of the customary fee arrangement, Class Counsel made this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Given Debtor's bankruptcy, there was an overarching and very real possibility that Class Counsel would prevail on liability, be awarded an allowed claim, which would be uncollectible because the estate is insolvent.  The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.

58.    Class Counsel submits that the award of a fee of one-third of the common fund, net of the service payments and expenses, is fully warranted based on awards of this kind.  As to fees in similar cases, Class Counsel has consistently been awarded by bankruptcy courts fees of one-third of the class recovery in WARN cases. *See, Capizzi and Barcelo AWTR Liquidation, Inc.,* Case No. 13-01209 (Bankr. C.D. Cal. 2012) (awarding attorneys' fees of 33⅓ % of settlement of approximately $1 million);  *Callahan, et al. v. Taylor Bean & Whitaker, et al.*, Adv. Proc. No. 09-00439 (JAF) (Bankr. M.D.Fla. 2010) (awarding attorneys' fees of 33⅓ % of $15 million settlement); *Johnson v. First NLC Financial Services, LLC,* Case No. 08-01130 (Bankr. S.D. Fla. 2008) (awarding attorneys' fees of 33⅓ % of $400,000 settlement*); Jackson v. Qimonda North America, Corp.,* 09-50912-MFW (Bankr. D. Del. 2009) (awarding attorneys' fees of 33⅓ % of up to $35 million Settlement Amount*); Mochnal v. EOS Airlines, Inc.*, Case No. 08-08279 (Bankr. S.D.N.Y. 2008) (awarding attorneys' fees of 33⅓ %  of settlement of approximately $1.7 million); *Rasheed v. American Home Mortgage Corp.*, Case No. 07-51688 (Bankr. D. Del. 2007) (awarding undersigned co-class counsel a fee of 33⅓ % of the Settlement Amount of $6.5 million); *Binford, et al v. First Magnus Capital, Inc*., 08-bk-01494-GBN (Bankr. D. Ariz. 2010)(despite Ninth Circuit attorneys' fees benchmark of 25%, awarding attorneys' fees of 33⅓ % of settlement of $2.6 million case and $2.9 million contingent proceeds); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex. 2007) (awarding attorneys' fees of 33⅓ % of $1.4 million settlement); *Bridges v. ContinentalAFA Dispensing Co.,* Case No. 08-45921 (Bankr. E.D. Mo. 2008)(awarding attorneys' fees of 33⅓ %  of $1.5 million settlement);and *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) (awarding attorneys' fees of 33⅓ % of $1 million settlement).

59.     Class Counsel has substantial experience in prosecuting large scale class and collective actions on behalf of employees and, specifically, WARN Act class actions such as this one.  Jack A. Raisner, a partner in the New York based firm of Outten & Golden LLP, a member of the firm's Class Action Practice Group and co-chair of the firm's WARN Act Class Action Practice Group, has extensive experience litigating plaintiff's employment rights matters, with a focus on the prosecution of class action and impact litigation of employment discrimination and wage and hour claims.  René S. Roupinian, a partner of Outten & Golden LLP and co-chair of the firm's WARN Act Class Action Practice Group and a member of its Class Action Practice Group, has represented tens of thousands of former employees in more than 100 WARN Act class actions, many of which were litigated in bankruptcy court.

60.     Class Counsel was retained by the Class Representative based on the firm's experience, expertise, and willingness to expend the time necessary to effectively litigate this case.  Outten & Golden LLP has been consistently retained in other WARN class actions by thousands of plaintiffs.  The paucity of expert WARN counsel implies few, if any, other counsel have the skill, experience and expertise required to handle such cases. These facts amply support a finding that this factor is satisfied.

61.     Here, the monetary result achieved on behalf of the Class is significant taking into consideration the assets available in the estate to pay creditor claims.  Debtor is in bankruptcy, where typically the estate has little to no ability to pay a significant portion of its debts.  The Settlement provides for wage priority status, which increases the likelihood that the claims will be paid out.  But for the Settlement Agreement, the likelihood of any members of the class receiving any recovery would have been in jeopardy. In light of the legal and factual complexities of this case, there is no doubt that this is a favorable settlement for the Class. The fact that these amounts

are available to Class Members without the uncertainty of trial, and are being delivered through the settlement process rather than another year of litigation and appeal, qualifies the results of this settlement as excellent under any reasonable assessment.

62.     Class Counsel provided legal services with considerable skill in the face of the difficult liability issues. The services were rendered with efficiency, in light of the motion practice, conversion, complexity of the issues, and the need for informal discovery. Class Counsel has developed special expertise in prosecuting WARN Act claims. Class Counsel's experienced representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees. The Class Representative supports the settlement and Class Counsel believes that few, if any, Class Members will object and that those objections, if any, will not be substantial or merited.

## IV.     NOTICE

63.     The Parties have provided notice of the hearing on this motion to the Office of the United States Trustee and to those parties that requested notice in the Case. In light of the relief requested, the Debtors submit that no party in interest will be prejudiced by the limited notice of the motion. Moreover, the cost of sending notice to all of the Debtors' creditors and other parties that might be entitled to notice under Fed. R. Bankr. P. 2002(a)(3) would be prohibitive. Accordingly, the Debtors requests that the Court find, pursuant to Fed. R. Bankr. P. 2002(a)(3) and 9007, that cause exists to limit notice to that already given.

## V.    WAIVER OF PAGE LIMIT RESTRICTIONS

64.    Given the complexity of the issues addressed herein, the parties respectfully requests retroactive leave for this Motion to exceed the fifteen (15)-page limit established by Rule 5005-3(C) of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois.

WHEREFORE, the Parties respectfully requests that the Court: (i) preliminarily approve the Settlement Agreement, attached as Exhibit A; (ii) approve the form and manner of Notice to the Class of the Settlement, attached as Exhibit B; (iii) enter an Order granting the Preliminary Relief in substantially the same form as that attached as Exhibit C setting a Fairness Hearing to finally approve the Settlement Agreement no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d); following the Fairness Hearing enter an Order in substantially the same form as that attached as Exhibit D giving final approval to the Settlement Agreement; and (v) grant such other and further relief that it deems just and equitable.

Quinola McCullough, on behalf of herself and as Class Representative

Dated: March 17, 2015

By ___/s/_____
One of their attorneys

René S. Roupinian
Jack A. Raisner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
Facsimile: 212-977-4005

David E. Cohen
Fisher Cohen Waldman Shapiro, LLP
1247 Waukegan Road, Suite 100
Glenview, Illinois 60025-3057
Telephone: (224) 260-3090
Facsimile: (312) 606-0117

*Counsel for Plaintiff and the certified class*

Respectfully submitted,

West Side Community Hospital, Inc., d/b/a
Sacred Heart Hospital, et al.,

Dated: March 17, 2015

By ____/s/ *Allen J. Guon*_____
         One of their attorneys

Robert M. Fishman (IL ARDC 3124316)
Richard Saldinger (IL ARDC 6209930)
Allen J. Guon (IL ARDC 6244526)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, IL  60654
Phone: (312) 541-0151
*Counsel for Debtors*